[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case comes to this court as a limited contested matter. Prior to the start of the trial on the second day, the parties stipulated as to custody and visitation, which custody and visitation were made an order of the court and will not be addressed herein.
The plaintiff, Deborah Melillo (hereinafter called "the wife"), had as a maiden name Carter. She married Michael Melillo, the defendant (hereinafter called the husband), on April 24, 1988 at Trumbull, Connecticut. The wife has been a resident of the State of Connecticut for at least one year prior to the date of the complaint. There are two minor children issue of the marriage; to wit: Mikki Melillo born March 13, 1987 and Anjelina Melillo born October 24, 1989. The State of Connecticut is not contributing to the support of the parties or their children. CT Page 6896
The court has heard the testimony of the parties and finds that the marriage has broken down irretrievably. This is a third marriage for the husband and a second marriage for the wife. The husband and the wife are high school graduates. The husband is a bartender. The central dispute in this case centers on the husband's actual earnings and earning capacity as compared to what he actually shows as earnings.
The husband shows net weekly income of $372.84 on his financial affidavit. The husband testified to his actual earnings and his tips. His boss testified and the work records of the business were introduced into evidence. It is clear that the restaurant business is dramatically effected by the economy as testified to both by the husband and the employer, Mr. Voight. Mr. Voight indicated that his first quarter of 1992 as compared to the first quarter of 1991 was down somewhere between 25 per cent and 30 per cent. Also, he believed the April and May statements will also reflect a 25 per cent to 30 per cent decrease, maybe more. Both the bar and regular dinners are slow. He does not have pooled tips as a policy at his restaurant.
It is clear that the husband has made ends meet by contributions from his mother. His mother testified that she can no longer make those contributions. She basically lives on retirement benefits that total approximately $920.00 per month, and there is no money, as she testified, to give him any more. She testified that she loves her son and grandchildren but cannot pay his bills anymore. There is just not enough money to go around in this case.
The wife is employed as a secretary-receptionist for the City of Bridgeport and makes net $111.81. She also gets child support from her former husband of a previous marriage and the father of one of her children of $50.00 per week.
The parties have arranged visitation in this matter to cover the time when the wife works so that she can avoid child care expenses beyond what she shows on her financial affidavit presently. Although the wife has attempted to show that the husband has earnings beyond what he shows on his financial affidavit, this court has not found that to be proven. The evidence presented by the husband and his boss substantiate the financial amounts shown in his financial affidavit.
The husband testified that the wife owned the house prior to his marriage to her. He claimed in his direct examination that he had reduced the mortgage principal by about $20,000.00 and had paid another $15,000.00 in miscellaneous CT Page 6897 bills including back taxes and the like. This testimony seemed to be inaccurate based on the amount of cash placed into the acquisition of this property in the approximate sum of $18,000.00. He did, apparently, obtain a substantial settlement of an automobile accident. It appears the better testimony is that he put into the house the approximate sum of $20,000.00. Exhibit I shows the husband's contribution to the refinancing of the house of about $18,000.00 in cash.
The wife has worked in the past. She had a full time job at one point at the First Connecticut Small Business Company, and she made approximately $240.00 per week net and turned that over to her husband. She did not involve herself with the finances during the course of the marriage. She perceived the problems in the marriage to be the personal relationship and not the financial. She felt that, when they were together as an intact family, their combined incomes were sufficient to support the household. She perceived the breakdown in the marriage was emotional and psychological abuse which she described as control. Her present part time job is for the City of Bridgeport Mental Health. The husband had been physically violent to the wife's son of another marriage.
The wife's health is generally good, but she has to take thyroid medication on a regular basis. If she does not take the medication, she becomes dizzy and lightheaded. She is living in the house and the husband is living with his mother. The wife shows the house with a value of $130,000.00 and the husband shows the value of the house to be $110,000.00.
The court finds that the marriage has broken down irretrievably and that the court has jurisdiction.
The court has listened to the witnesses and reviewed all the exhibits in the case. In addition, the court has taken into consideration all the criteria set forth in Connecticut General Statutes 46b-81, the assignment of property and transfer of title statute; 46b-82, the alimony statute;46b-84, the child support statute; 46b-62, the attorney's fees statute; 46b-84 the child support and the support guidelines statute. The court has also reviewed all other relevant statutes and case law, in particular the authority of Scherr v. Scherr, 183 Conn. 366 (1981). Accordingly, the court orders as follows:
1. The marriage is dissolved on the grounds of irretrievable breakdown.
2. A wage execution is ordered. CT Page 6898
3. The arrearage is fund to be $1,685.47 as to pendente lite orders and $500.00 for fees for a total arrearage agreed on between the parties of $2,185.47. That arrearage is to be paid within thirty (30) days of the date of this decision.
4. The husband is to maintain medical insurance coverage for the minor children as is presently provided. Unreimbursed medical and dental expenses of the children are to be shared equally by the parties.
5. Child support based on the child support guidelines for the husband, the noncustodial parent, is $152.00. The court has adopted the husband's computations on the child support guidelines. The wife's guidelines involve computations based on income that has not been proven.
6. The husband is to pay the wife $1.00 per year for five (5) years from the date of this judgment.
7. The husband is to convey to the wife his interest in the marital home. The marital home is located at 25 Carlson Avenue, Bridgeport, Connecticut. He is to convey it to her within thirty (30) days of this decree. If he fails to do so, then the property shall be transferred pursuant to court decree under the provisions of Connecticut General Statutes 46b-81b.
 On the sale of the house, the wife shall pay to the husband the sum of $10,000.00 representing a partial return to him of his contribution made during the refinance of the premises.
8. The wife is to assume the financial obligations, past and current, for the household expenses including mortgage, taxes, homeowners' insurance, utilities, maintenance and the like and to indemnify and hold the husband harmless therefrom.
9. The husband is to be responsible for the obligations listed on his financial statement and to indemnify and hold the wife harmless therefrom. They include the First Connecticut Credit Union Master Card, First Select Visa, First Connecticut Credit Union personal loan, Sears and collateral loan NHSB.
10. The husband is to make a contribution to the wife's attorney's fees in the sum of $1,500.00. Said amount is to be paid by the husband to the wife within six (6) months of the date of this decree. CT Page 6899
11. As to the personal property, the parties have agreed that the husband can have the following items:
a. the tin can collection;
b. the wooden toolbox and hand tools and power tools;
c. two Planters Peanuts jars;
d. personal clothing;
e. personal baby pictures;
f. personal photos;
g. automobile title for 1979 Chevrolet Monte;
h. antique jewelry box;
i. dehumidifier (Maytag);
12. The wife is awarded the 1988 Chevrolet Celebrity. She shall be responsible for the outstanding indebtedness and hold the husband harmless in connection with that loan. The husband is awarded the 1979 Chevrolet as shown in his affidavit.
13. Each of the parties will now keep as their sole and exclusive property all of the other property that they have in his/her possession except for the exercise bike that came in dispute. The exercise bike is awarded to the husband. All other household items and tools and appliances and furnishings and furniture currently on the premises in the marital home are awarded to the wife.
14. The husband's coin collection and dollar collection are awarded to him.
All claims for relief by either party not addressed herein have been rejected.
EDWARD R. KARAZIN, JR., JUDGE CT Page 6900